In the matter of NATHAN B. MORSE and NICHOLAS STIL-
WELL, Commissioners under the act to provide for the con-
tinuation of Flatbush Avenue, *vs.* PETER WILLIAMSON,
Collector, &c.

The commissioners appointed under an act of the legislature to lay out, grade
and otherwise improve an avenue, for public use, and to make an assessment
upon the real estate of the town, of the expenses of the improvement, and
the collector appointed to collect such assessment, have no authority, except
such as is specially conferred in the act, and that authority must be strictly
pursued.

The powers to be exercised for that purpose are in derogation of the common
law. They are powers to take the property of one person and transfer it
to another; and although the object to be achieved is a public benefit — a
useful public improvement — the actors must find authority and warrant
for whatever they may do, in the letter or by necessary implication of the
statute under which they proceed.

When commissioners appointed under the act of April 17, 1854, to provide for
the continuation of Flatbush avenue from the city line of Brooklyn into the
town of Flatbush, have made an assessment of the expenses of the im-
provement, issued their warrant, and placed it in the hands of the col-
lector to be executed, and the same, after having been partly executed,
has been received by them again from the collector with his return there-
on, and by them filed in the county clerk's office, their powers in respect
to such warrant are expended; and they cannot take it from the files and
re-issue it, to a new collector; nor can they issue another.

And an order, made by the county court, is no authority for the re-issuing of
such a warrant; that court having no power to give any direction on the
subject.

In street assessments, and improvements of a like character, the courts do not
exercise their ordinary jurisdiction, but act in execution of the power spe-
cially conferred upon them by the statutes under which the improvements
are made.

The act of April 17, 1854, to provide for the continuation of Flatbush avenue,
declared radically defective; inasmuch as it contains incongruous and ir-
reconcilable provisions, and omits to confer the powers indispensable to its
due execution.

THIS was an appeal from an order made at a special term,
denying a motion for a writ of mandamus.

*John N. Taylor*, for the commissioners.

*P. S. Crooke*, for the collector.

Morse *v.* Williamson.

*By the Court,* BROWN, J. Application was made at the special term held at Brooklyn, in November, 1861, upon due notice for an order that a writ of mandamus issue against Peter Williamson, collector of taxes in the town of Flatbush, upon the following facts, which appeared in the moving papers:

Nathan B. Morse, Nicholas Stilwell and one John G. Bergen were duly appointed by the county court of Kings county, commissioners under the act of the 17th of April, 1854, to provide for the continuation of Flatbush avenue from the city line of Brooklyn into the town of Flatbush,(a) to perform the duties and execute the trusts mentioned in the act. The commissioners, pursuant to the directions of the 7th section, proceeded to make an assessment upon the real estate of the town of Flatbush of the expenses of grading, paving, curbing and guttering the avenue and making suitable sidewalks and culverts therein, and for the expenses of advertising, commissioners' fees, &c. which was duly filed in the office of the clerk of the town, and reviewed upon notice, as required by the act: The report of assessment was, by the commissioners, presented to the county court of Kings county and confirmed by an order thereof, on the 3d day of April, 1858. On the 8th of April they delivered the assessment roll with a warrant of collection annexed thereto to the collector of taxes for the town of Flatbush, whose name is not given, requiring him to collect from the persons named in the assessment roll the several sums of money charged to them, amounting to $30,000 and upwards. That the collector received about $548 from some of the persons named in the roll, when his further proceedings were stayed by a writ of certiorari issued out of this court with an order staying his further proceedings, at the instance and relation of some of the persons charged with the assessment. The collector afterwards made a return to the warrant, to the effect that he had received the sum of money mentioned above, which

(a) *Laws of* 1854, *p.* 776.

he then paid into the hands of the commissioners, and that he had been unable to enforce the collection of the residue of the moneys by reason of such order of this court. The commissioners thereupon, and on the 22d of February, 1859, deposited the warrant and roll in the office of the clerk of the county of Kings. On the 9th of September, 1861, the county court, upon the motion of the commissioners, made an order authorizing the clerk to deliver the warrant of collection and the assessment roll to Peter Williamson, the present collector of the town of Flatbush, to the end that he should proceed to collect the unpaid assessments thereon, which were on the same day delivered to him pursuant to the exigency of the order. That the collector, upon receiving such warrant and assessment roll, refused to proceed to the collection of such moneys, or to execute the said warrant in any manner. The motion was that a writ of mandamus might issue out of this court directing the collector, Peter Williamson, to proceed with the execution of the warrant, and collect and pay over to the commissioners the moneys for unpaid assessments therein mentioned. The motion was opposed by the collector, upon the ground that both himself and the commissioners were without authority in the premises. The court denied the motion, and the commissioners appealed to the general term.

To form a just estimate of the powers and duties of the officers charged with the execution of this statute, reference must be had to its various provisions. The commissioners and the collector have no authority except such as is specially conferred therein, and that authority must be strictly pursued. The purpose of the act is to lay out, grade and otherwise improve an avenue for public use, and to take private property for that purpose. The powers to be exercised for that purpose are in derogation of the common law. They are powers to take the property of one person and transfer it to another; and although the object to be achieved is a public benefit—a useful public improvement—the actors must

Morse *v.* Williamson.

find authority and warrant for whatever they may do, in the letter or by necessary implication of the statute under which they proceed. Whatever may be the things which the legislature have deemed essential to a due execution of the power granted, must be strictly performed. The law will be satisfied with nothing less. (*Sherwood* v. *Reade*, 7 *Hill*, 431.) This is the substance of all the cases, and in none more clearly and emphatically expressed than in that of *Sharp* v. *Speir*, 4 *Hill*, 76.) By the 4th and 7th sections of the act for the continuation of Flatbush avenue, the commissioners, after reviewing and perfecting their assessment, shall, upon ten days' notice of the time and place of presenting their report thereof, present the same to the county judge, who may confirm the same if he deems it correct, and if not, he may recommit it to the same commissioners, for review. Upon its confirmation, the commissioners are authorized to issue a warrant to the collector of the town in the form that warrants of the board of supervisors are made out, and directing the moneys mentioned in the roll to be paid to the commissioners within sixty days after the same shall have been delivered to the collector. He is required to collect the same in the same manner as other town taxes, and shall have all the powers now conferred by law for that purpose. At the expiration of sixty days he shall make return to the commissioners, of the moneys received by him, and make out and verify his return as he is now required by law to make his return to the county treasurer, of county taxes. Then the commissioners are to file the return in the office of the clerk of the county of Kings, and the same shall be a lien on the lands assessed, and have the effect of a judgment. The act further provides that the county clerk may, for the space of thirty days, receive the amount of any assessment, with ten per cent interest thereon. Section 8 then provides and directs that the supervisor of the town of Flatbush shall, after the expiration of the thirty days mentioned in the 7th section, proceed to sell the lands at public auction, and

to execute certificates of sale to the purchasers thereof. It appears that the warrant, with the assessment roll annexed, was delivered to the collector by the commissioners on the 8th of April, 1858. That he collected a portion of the moneys, which he paid to the commissioners and returned to them his warrant, with a return indorsed thereon that he had been unable to enforce the collection of the residue by reason of the order staying his proceedings. The commissioners filed the return and the warrant and assessment roll in the office of the county clerk, where it remained until September, 1861, when it was taken from the files under the order of the county court and placed in the hands of the present collector. The warrant, it will be observed, was partly executed, and returned and filed in the proper office. Have the commissioners any further power over it? They themselves received it and filed it with the clerk. Can they take it from the files and re-issue it to a new collector, or can they issue another? They are not public officers with general powers to issue warrants from time to time, to collect unpaid assessments. But they are persons selected to execute the particular statute and to do the acts therein designated, and nothing else. If they may re-issue this warrant once, they may re-issue it as often as any thing remains uncollected upon it; and the collection of moneys which are needed, doubtless, to pay the expenses of the improvement, may be procrastinated indefinitely. It seems to me that when the commissioners issued the warrant and placed it in the hands of the collector to be executed, and more especially when they accepted his return and filed it in the clerk's office, their powers in respect thereto were expended. The legislature probably saw some of the consequences of giving power to re-issue and renew from time to time warrants of this character, and purposely withheld it. The order of the county court is no authority for the re-issuing of the warrant. It had no power to give any direction upon the subject. It had power to appoint the commissioners, to examine, confirm or recommit

their report for correction, but with the process or proceedings to collect the assessment it had nothing whatever to do. It has been repeatedly decided that in street assessments, and improvements of a like character, the courts do not exercise their ordinary jurisdiction, but act in execution of the power specially conferred upon them by the statutes under which the improvements are made. (*Embury* v. *Conner*, 3 *Comst.* 511.) See also *Stafford* v. *The Mayor &c. of Albany*, (7 *John.* 541,) where it was held that the mayor's court of the city of Albany, under a statute similar to that for the continuation of Flatbush avenue, had no power to set aside the proceedings for irregularity; saying, "the proceedings in question did not partake of the nature of judicial proceedings. There is nothing to be done by the mayor's court but to affirm or disaffirm the assessment."

There is also another impediment in the way of granting the motion for a mandamus, quite as formidable as that already mentioned. Those who framed the statute have taken little or no thought in adjusting its several provisions in harmony with one another, and to define with reasonable precision the duties of those persons charged with its execution. Certain parts of the act proceed upon the theory that a certain kind of assessment is to be made by the commissioners, while in fact the act directs another and a different kind, and that the moneys are to be collected from one source while in fact the act, in express terms, directs that they shall be realized from another. After reviewing and completing the assessment and its confirmation by the court, the commissioners are directed by the 7th section "to issue a warrant to the collector of the town in the form that warrants of the board of supervisors are made out. This direction implies that the moneys are assessed upon persons in respect of their property, and not upon property irrespective of persons. So the collector is, by the same section, and after the lapse of sixty days from the time he receives the warrant, to return the same to the commissioners, which "he shall make out and ver-

ify as he now is obliged by law to make his return to the county treasurer, of county taxes." This direction implies that the warrant is issued against persons, with authority to levy the assessment by distress and sale of their goods and chattels. If we turn to the general statutes in regard to the assessment and collection of taxes, we shall find that the assessors are directed to ascertain, by diligent inquiry, the names of all the taxable inhabitants of their respective towns or wards. They are to prepare an assessment roll with four different columns; in the first of which they are to set down the names of the taxable inhabitants, in the second the land taxed to each person, in the third the value of the land, and in the fourth the personal property of the persons named in the first column liable to taxation. (1 *R. S.* 290, §§ 8, 9. This is an assessment upon persons in respect of the property of which they are the owners. The collector's warrant is annexed to this roll, and in case the person taxed refuses to pay on demand, he is to levy the tax by distress and sale of his goods and chattels. (*Sec.* 2.) When he makes his return to the county treasurer, if any of the taxes remain unpaid he shall make oath to that effect, and that he has not, upon diligent inquiry, been able to discover any goods or chattels belonging to or in the possession of the person charged with the tax, whereon he could levy the same. The framers of the Flatbush avenue act have directed that this form of collctor's warrant and his return thereto should be adopted and followed in executing its provisions; overlooking, in the meantime, the important fact that the assessments made under it are upon property—real property exclusively—and not upon persons, as in the general statutes. The 7th section, in so many words, directs that the commissioners "shall proceed to assess the aggregate amount (of the whole cost of the work, including fees and their due compensation,) on the real estate in said town, in proportion to the benefits to be derived from said avenue so opened, graded, curbed and guttered as aforesaid." This is an assessment upon property,

"real estate" benefited by the improvement, to the exclusion of persons and personal property. The commissioners have no power to issue a warrant to seize and sell personal property for the payment of the tax. They are not authorized to charge persons with its payment, and the act furnishes no means by which they could ascertain who the owners and persons to be charged are. So, too, with the collector. No warrant they could issue would be any justification for any distress and sale he might make under it, and he therefore could not with safety proceed to enforce the collection of the money, "make out and verify his return, as he is now obliged by law to make his return to the county treasurer, of county taxes." I think the statute radically defective—defective, inasmuch as it contains incongruous and irreconcilable provisions, and omits to confer the powers indispensable to its due execution.

The order of the special term should be affirmed with costs.

[KINGS GENERAL TERM, December 9, 1861. *Emott, Brown* and *Scrugham,* Justices.]